UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TANA L. MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-CV-00082-NCC |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Tana L. Murphy ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 25). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on October 1, 2015 (Tr. 225-32). Plaintiff was initially denied on December 31, 2015, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on January 26, 2016 (Tr. 146-59, 162-66). After a hearing,

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by decision dated December 6, 2017, the ALJ found Plaintiff not disabled (Tr. 12-33). On July 13, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2015, and that Plaintiff has not engaged in substantial gainful activity since April 1, 2014, the alleged onset date (Tr. 17). The ALJ found Plaintiff has the severe impairments of right knee chondrosis, osteoarthritis, and meniscus tear status post-surgery, polyarthralgia, morbid obesity, degenerative disc disease and facet arthropathy, bilateral sacroiliitis, borderline intellectual functioning, bipolar affective disorder, major depressive disorder, borderline personality disorder, and obsessive-compulsive disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-21). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[2] with the following limitations (Tr. 21). She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl (*Id.*). She can have occasional exposure to vibration, but cannot work at unprotected heights, work around moving mechanical parts, or operate a motor vehicle as a job duty (*Id.*). She is limited to simple routine tasks and simple work-related decisions (*Id.*). The ALJ found that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform including addressing

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 416.967(a), 404.1567(a).

2

clerk and document preparer (Tr. 26-27). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 27). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

3

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff generally asserts that the ALJ erred in determining an RFC not based on substantial evidence (Doc. 18 at 14-18).[3] Plaintiff specifically argues that the ALJ erred in not applying the appropriate weight to the opinion of treating psychiatric nurse practitioner Carol Greening,[4] APRN PMHCNS-BC[5] (Doc. 18 at 11-14). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and

---

[3] Plaintiff only raises issues in her brief as to her mental health impairments. Accordingly, the Court will not address Plaintiff's physical impairments.

[4] Plaintiff incorrectly identifies Ms. Greening as a "treating physician" (Doc. 18 at 11).

[5] Advanced Practice Psychiatric Nurse and Adult Psychiatric-Mental Health Clinical Nurse Specialist.

5

physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ determined Plaintiff has the RFC to perform sedentary work with the following limitations (Tr. 21). She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl (*Id.*). She can have occasional exposure to vibration, but cannot work at unprotected heights, work around moving mechanical parts, or operate a motor vehicle as a job duty (*Id.*). She is limited to simple routine tasks and simple work-related decisions (*Id.*).

First, Plaintiff argues that the ALJ erred in not applying the appropriate weight to Plaintiff's treating psychiatric nurse practitioner Carol Greening, APRN PMHCNS-BC ("Ms. Greening") (Doc. 18 at 11-14). In her Medical Source Statement ("MSS") dated June 1, 2017, Ms. Greening concluded: "I believe that [Plaintiff] is permanently disabled and unable to maintain employment" (Tr. 1546). In doing so, Ms. Greening indicated that Plaintiff's ability to understand, remember, and carry out instructions is affected by her bipolar disorder, OCD, and panic disorder, noting that Plaintiff has moderate to severe anxiety around others and learning disabilities (Tr. 1544). Ms. Greening specifically opined that Plaintiff has marked restriction in her ability to understand, remember, and carry out simple instructions, and extreme limitations on her ability to make judgments on simple work-related decisions, understand, remember and carry out complex instructions, and make judgments on complex work-related decisions (*Id.*). Ms. Greening further opined that Plaintiff has moderate restriction in her ability to interact appropriately with the public and with co-workers, marked restriction in her ability to interact appropriately with supervisor(s), and extreme restriction in her ability to respond appropriately to usual work situations and to changes in a routine work setting (Tr. 1545). Ms. Greening indicated that multiple related issues support her assessment and highlighted Plaintiff's anxiety as affecting Plaintiff's ability to deal with stressful situations (*Id.*). Ms. Greening additionally

7

noted that Plaintiff has other capabilities affected by her mental health impairments, specifically mood swings, difficulties with concentration and focus, processing information, depression, anxiety, and a history of being very impulsive and making poor decisions for herself (*Id.*). Ms. Greening also opined that Plaintiff would miss more than four days of work per month, require unscheduled breaks during the work day. and would be off task 25% or more of the day (Tr. 1545-56).

The MSS provided by Ms. Greening must be evaluated as information provided by an "other" medical source. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). "Other" sources are medical sources who are not "acceptable" medical sources and include nurse practitioners, physician assistants, licensed clinical workers, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. § 404.1513(d)(1).[6] Opinions from "other" medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the record. *Sloan*, 499 F.3d at 888-89. In general, when weighing the opinion of an "other" medical source, an ALJ should consider: the length of time and frequency of Plaintiff's visits with the source; the consistency of the source's opinion with other evidence; the evidence and explanations supporting the source's opinion; the source's specialty; and any other factors that tend to support or refute the opinion. *See* Social Security Ruling 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006); 20 C.F.R. § 404.1527. Information from these other sources cannot establish the existence of a medically determinable impairment but may provide evidence to show the severity of impairments and how they affect Plaintiff's ability to work. *Sloan*, 499 F.3d at 888. "[An] ALJ is permitted to discount such [other source]

---

[6] Under current regulations, effective March 27, 2017, medical opinions from all medical sources are treated the same; "[a] medical opinion is a statement from a medical source about what you can still do despite your impairments." *See* 20 C.F.R. § 404.1513(a)(2) (effective Mar. 27, 2017). However, Plaintiff's claim was filed on October 1, 2015, so the old regulations apply.

8

evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015).

The ALJ properly considered the opinion of Ms. Greening and afforded it "little weight" (Tr. 24-25). First, the ALJ noted that Ms. Greening's finding of disability is a finding reserved to the Commissioner (Tr. 24-25). An opinion that a claimant is incapable of gainful employment is often not entitled to significant weight. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (quoting Bradley v. Astrue, 528 F.3d 1113, 1116 (8th Cir. 2008)); 20 C.F.R. §§ 404.1527(d), 416.927(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Second, the ALJ found Ms. Greening's findings of marked to extreme limitations in most work-related tasks and other restrictions appear to be largely based on subjective complaints as they do not correspond with Plaintiff's overall normal mental status examinations or Global Assessment of Functioning (GAF)[7] scores (Tr. 25). Indeed, upon review of the record, Ms. Greening's MSS is inconsistent with her own treatment notes as well as the mental health evidence as a whole. Specifically, as noted by the ALJ, Plaintiff appeared to be responding well to her mental health treatment (Tr. 23). Contrary to Plaintiff's assertion pursuant to *Nevland* that the ALJ drew upon her own inferences from medical records, the medical evidence supports this finding of the ALJ (Doc. 18 at 14-15). *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Plaintiff frequently reported doing well and coping effectively with decreased symptoms on

---

[7] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

9

medication to medical professionals including Ms. Greening (Tr. 883, 919, 929, 933, 1290, 1339, 1344, 1365). Indeed, Ms. Greening generally noted that Plaintiff's condition was stable or improving and, by January 2017, Plaintiff was only following up with Ms. Greening every three months (Tr. 44, 885, 918, 922, 933, 1343, 1348, 1363, 1369). For example, Plaintiff reported in a July 2015 encounter that, "I'm doing pretty good," and Ms. Greening indicated that Plaintiff's mood was stable and noted no mood swings, mild anxiety, energy and motivation good (Tr. 915). Records from Ms. Greening also demonstrated Plaintiff's GAF scores fluctuated between 62-70 which corresponds with only mild to moderate limitations in functioning (Tr. 25). *See e.g.,* Tr. 839 (64), 915-16 (69), 929-30 (70), 1357 (69). While Plaintiff was voluntarily hospitalized in June 2014 as a result of suicidal ideation, as noted by the ALJ, this incident appears to be related to a specific situational stressor and Plaintiff has not had any other further incidents of seeking urgent, critical care either via the emergency department or in-patient hospitalization (Tr. 23, 48, 565-87, 815-26). Additionally, state agency non-examining psychologist Dr. James W. Morgan, Ph.D. opined that Plaintiff's symptoms were mild and her mental health impairments were non-severe (Tr. 20, 25, 120). *See* 20 C.F.R. §§ 404.1513a(b)(1); 416.913a(b)(1) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence). To the extent the Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Third, as noted by the ALJ, Plaintiff's activities of daily living are inconsistent with Ms. Greening's findings; Plaintiff is able to exercise regularly on a treadmill, swim at a hotel pool,

10

take daily walks with a relative, work at a daycare center during the current disability period, and, as addressed in more detail below, engage in social interactions (Tr. 24, 702, 934, 1227, 1230, 1238, 1549). An ALJ may properly consider the inconsistency of a medical opinion with plaintiff's self-reported activities of daily living in determining what weight to assign the opinion. *Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("[Plaintiff's] self-reported activities of daily living provided additional reasons for the ALJ to discredit [the treating physician's] pessimistic views of her abilities.").

Plaintiff also appears to argue that the ALJ failed to properly consider the opinion of consultative examiner and clinical psychologist Dr. Frank Froman, Ed.D. ("Dr. Froman") (Doc. 18 at 16-18). After examination, on May 4, 2016, Dr. Froman also issued a Medical Source Statement in which he indicated that Plaintiff has mild restriction in the ability to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions (Tr. 1286). Dr. Froman also opined, as a result of her low IQ, that Plaintiff has marked limitations in her ability to understand and remember complex instructions and extreme limitations in both her ability to carry out complex instructions and her ability to make judgments on complex work-related decisions (*Id.*). Dr. Froman further indicated that Plaintiff has moderate restrictions in all areas of social interaction (Tr. 1287).

The ALJ properly considered the opinion of Dr. Froman, affording it "partial weight" (Tr. 24). Specifically, the ALJ assigned "lesser weight" to Dr. Froman's findings regarding Plaintiff's ability to interact with others and to work at a competitive rate (*Id.*). The ALJ noted that these parts of Dr. Froman's opinion do not correspond with Plaintiff's average processing speed on IQ testing (*Id.*). The ALJ also found this portion of Dr. Froman's opinion inconsistent with Dr. Froman's observation of Plaintiff's "excellent" ability to relate with appropriate speech

11

and good eye contact, Plaintiff's other exams, and Plaintiff's frequent reports of dating (*Id.*). The ALJ assigned "greater weight" to Dr. Froman's findings of moderate limitation in dealing with work stress and mild limitation in dealing with simple instructions and simple work-related decisions (*Id.*). The ALJ found these aspects of Dr. Froman's statement to be consistent with Plaintiff's borderline IQ scores, mental status examinations showing intact cognition and intelligence, and prior ability to work with her mental conditions (*Id.*). Overall, the ALJ determined that these opinions support a restriction to simple, routine tasks and simple work-related decisions as included in her RFC determination (*Id.*).

The ALJ's analysis is supported by the medical record as a whole, as addressed in detail above, as well as Dr. Froman's own report. In conjunction with his MSS, Dr. Froman also issued a Psychological Report also dated May 4, 2016 (Tr. 1289-97). Specifically, Dr. Froman indicated "unremarkable" presentation, noting, as the ALJ indicated, that "Her ability to relate was excellent" (Tr. 1290). Dr. Froman also included Plaintiff's self-reports that she "does not socialize" and "has a very 'hair trigger temper'" (Tr. 1290, 1295). After administration of the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV"), Dr. Froman additionally concluded that, "[Plaintiff] may experience difficulty in keeping up with her peers in a wide variety of situations that require thinking and reasoning abilities. Her ability to reason with words is comparable to her ability to reason without the use of words. [Plaintiff's] verbal and nonverbal reasoning abilities are in the borderline range" (Tr. 1291). As to verbal comprehension, Dr. Froman found that Plaintiff's verbal reasoning abilities are in the "borderline range and above those of only 2% of her peers" (Tr. 1292). While Dr. Froman could not indicate a "single clear answer" as to whether Plaintiff would be able to withstand the stress associated

with customary employment, he also noted Plaintiff's bipolar disorder is well controlled and that Plaintiff is capable of understanding oral and simple written instructions (Tr. 1295-96).

Plaintiff raises a number of discrete issues regarding Dr. Froman's opinion and his associated findings. First, Plaintiff asserts that Plaintiff's low verbal comprehension score, as determined by Dr. Froman, indicated that she would have difficulty keeping pace in the work place (Doc. 18 at 18). However, the ALJ properly accounted for the limitations proposed by Dr. Froman, limiting Plaintiff to simple routine tasks and simple work-related decisions in her RFC determination (Tr. 21). Second, Plaintiff argues that the ALJ erred in finding mild limitations regarding socialization or interacting with others (Doc. 18 at 17). Plaintiff contests the ALJ's characterization that since Plaintiff reported she was dating that she does not have problems with socialization or interacting with others (*Id.*). Contrary to Plaintiff's assertion, the ALJ may properly rely on Plaintiff's social interactions including dating when determining Plaintiff's RFC and there were frequent records in which Plaintiff self-reported dating and on one occasion Plaintiff even indicated that she was engaged (Tr. 883 (self-reporting that she was—"Great! I got engaged")). *See also* (Tr. 65, 121, 840, 854, 915, 919, 924, 1339, 1344, 1365). *Sandra H. v. Berryhill*, No. 18-CV-0632 (ECW), 2019 WL 917090, at *6 (D. Minn. Feb. 25, 2019) (finding the ALJ properly determined plaintiff's daily activities were inconsistent with her complaints of disabling symptoms in part because the record reflected the plaintiff remained "socially engaged" with a boyfriend). Regardless, the ALJ also considered Plaintiff's other means of engaging in social interactions, specifically finding Plaintiff's ability to go out with friends, shop at Walmart, attend church weekly, take walks, swim at a motel, work at a daycare center, and exercise at the YMCA as contraindicative of severe limitations in the area of interacting with others (Tr. 19, 24, 310, 320, 929, 934, 1227, 1230, 1238, 1564). Finally, to the extent Plaintiff

suggests that the ALJ failed to properly support her RFC determination with a medical opinion, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*¸829 F.3d 926, 932 (8th Cir. 2016).

In conclusion, the Court finds Plaintiff's arguments without merit and that the ALJ's RFC determination regarding Plaintiff's mental health impairments to be supported by substantial evidence because the ALJ properly considered the relevant medical opinion evidence of record.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 24th day of September, 2019.

  /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE